FILED
2022 Jan-03  PM 01:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| **KATHY RAKESTRAW VASSER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:19-cv-1823-CLM** |
| | ) | |
| **TEZI EXPRESS, LLC, JASMIN BAKIC, MAX TRUCKING, LLC, MAX TRUCKING LOGISTICS, INC., and 360 LOGISTICS, LLC,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

This case stems from Danny Vasser's fatal collision with an 18-wheeler. In this memorandum opinion and order, the Court denies the defendants' motion for partial summary judgment (doc. 50) and the plaintiff's motion for partial summary judgment on the defendants' contributory-negligence defense (doc. 56). The Court also denies the defendants' motion to strike (docs. 76, 77) and denies without prejudice the plaintiff's motion to exclude part of the defense expert's testimony (doc. 56).

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of September 3, 2019, Danny Vasser was driving his Harley Davidson motorcycle southbound on Alabama Highway 211 on his way to work. (Doc. 66 at 4 ¶ 1). Vasser approached the overpass where Highway 211 crosses over Interstate 59 around 6:00 a.m. (Docs. 65 at 3 ¶ 3, 66 at 4 ¶ 2).[1] At about the same time, Jasmin Bakic was driving an 18-wheeler up the northbound exit ramp from I-59 to Highway 211. (Docs. 65 at 3 ¶ 3, 66 at 4 ¶ 3).

There's a stop sign at the top of the exit ramp. (Doc. 62-11). As these pictures show, there's also a road sign that could obstruct a driver's view as he looks to the left. (*Id.*).



---

[1] By then, it was daytime. (Doc. 58 at 12). And there was no rain. (Doc. 63 at 21).



(Doc. 62-11). Vasser and Jasmin collided in the southbound lane of Highway 211 just beyond the stop sign. Vasser did not survive.

The parties give different accounts of the accident. Jasmin testified in his deposition that he stopped multiple times (short of the stop line and at the stop line) and looked both ways several times but never saw Vasser. (Doc. 52-1 at 56–57).

Vasser's wife Kathy is the personal representative of Danny's estate and is the plaintiff here. She contends that Jasmin failed to carefully observe traffic, failed to yield to a vehicle that he *did* see, and ran the stop sign. (Doc. 71 at 15–17). Kathy sued five defendants: Jasmin (the driver); Tezi Express, LLC (the trucking company that employed Jasmin); Max Trucking, LLC (another trucking company); Max Trucking Logistics, Inc. (a company that owns and leases trucks, trailers, and

equipment); and 360 Logistics, LLC (a company that brokered the load Jasmin was carrying from Max Trucking, LLC to Tezi Express, LLC). She sued for: (1) wrongful death related to Jasmin's negligent (or wanton) operation of the eighteen wheeler; (2) negligent (or wanton) entrustment; and (3) negligent (or wanton) hiring, supervision, training, and retention. (Doc. 24).

After discovery, the defendants moved for partial summary judgment on every claim except for negligence against Jasmin and respondeat superior against Tezi Express. (Docs. 50, 65 at 11). Vasser moved for partial summary judgment on the defendants' contributory-negligence defense that Danny Vasser's motorcycle headlight was unlit. (Doc. 56). She also moved to exclude part of the defendants' expert testimony. (*Id.*). And the defendants moved to strike Vasser's reliance on documents they say contain inadmissible hearsay. (Docs. 76, 77).[2]

## STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if its resolution

---

[2] Vasser dismissed her claims against Max Trucking Logistics and 360 Logistics. (Docs. 71, 72).

"might affect the outcome of the suit." *Id.* At the summary-judgment stage, "[a]ll evidence and factual inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts about the facts are resolved in favor of the non-moving party." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021).

## DISCUSSION

The Court addresses the defendants' motions then Vasser's motions.

## I.    The defendants' motion for partial summary judgment

The Court divides this section into four parts. First, the Court determines whether Vasser has enough evidence to support a wantonness finding against Jasmin. Second, the Court addresses whether Tezi Express and Max Trucking could be liable under respondeat superior. Third, the Court looks at the other claims against Tezi Express. And fourth, the Court resolves the other claims against Max Trucking.

### A.    Does the evidence support a wantonness finding against Jasmin?

Vasser sued Jasmin for "negligent or wanton" operation of the 18-wheeler. (Doc. 24 at 7). The defendants seek summary judgment on wantonness only. (Doc. 65 at 11). The Court denies their motion because a reasonable juror could find that Jasmin's conduct was wanton.

"Wantonness" is "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing

or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007). The defendants contend that "[t]here is no evidence that Jasmin drove with a conscious disregard for the safety of others such as distraction, speed, or other reckless behavior." (Doc. 65 at 12). Vasser responds that Jasmin: (1) failed to look carefully for oncoming traffic, (2) consciously failed to yield to a vehicle he did see, and (3) ran the stop sign. (Doc. 71 at 15–17).

A jury could find that Jasmin never stopped his 18-wheeler at a position where he could carefully look for oncoming traffic, and he failed in fact to look carefully for oncoming traffic. That's enough for the wantonness claim to proceed to trial.

First, a jury could find that Jasmin never stopped at a place where he could look for oncoming vehicles. Two eyewitnesses testified that Jasmin never stopped at (or shortly beyond) the stop sign. (Docs. 58 at 14–25, 63 at 35–36). Although those witnesses conceded that they couldn't say that Jasmin *never* stopped (that is, short of the stop line), Jasmin himself testified that he couldn't see traffic the first time he stopped (which he says was somewhere short of the stop line). (Doc. 52-1 at 56).[3] And other evidence shows that a Jasmin could have stopped (with a somewhat unobstructed view) just beyond the stop sign but short of the intersecting lane:

---

[3] The Alabama Supreme Court has suggested that the presence of an obstruction or poor visibility conditions diminish culpability. *See Collins v. Shelley*, 514 So. 2d 1358, 1361 (Ala. 1987). But that principle does not absolve Jasmin's liability for failing to stop his eighteen wheeler at a place where he *could* have looked for oncoming traffic.





(Doc. 62-12). When viewed in the light most favorable to Vasser, a reasonable juror could find that this evidence shows that Jasmin never stopped at any place where he could look for oncoming traffic.[4]

---

[4] The evidence does not support a finding that Jasmin *never* stopped his 18-wheeler. Rather, only that he failed to stop at a place where he could look for oncoming vehicles.

Second, a reasonable juror could find that Jasmin failed to carefully observe Highway 211 for oncoming vehicles. Jasmin testified that he didn't see Vasser on his motorcycle. (Doc. 52-1 at 57–58). He testified that he saw two vehicles. (*See id.* at 56). But the undisputed facts show that two other vehicles were on Jasmin's right. (Doc. 58 at 8, 11, 24–25). And a jury could reasonably infer that Jasmin didn't see those vehicles because he failed to carefully observe traffic.

The Alabama Supreme Court has held that a defendant's "failure to look" in the direction of the plaintiff is evidence of wantonness. *Bishop v. Poore*, 475 So. 2d 486, 487 (Ala. 1985). It has also held that a defendant's ignoring a stop sign supported a wantonness claim. *Clark v. Black*, 630 So. 2d 1012, 1016 (Ala. 1993). And this Court has held that a driver's failure to stop is enough to find that the defendant did so "consciously" (that is, with the requisite mental culpability). *Smith v. Schwan's Food Serv.*, 7:13-CV-844-RDP, 2015 WL 5559825, at *6 (N.D. Ala. Sept. 18, 2015). Considering those precedents, Vasser has presented enough evidence to support a finding that Jasmin wantonly operated the 18-wheeler.[5]  So the Court denies summary judgment on Vasser's wantonness claim.

---

[5] Vasser also argued that Jasmin failed to yield to oncoming traffic. (Doc. 71 at 15–16). Because the Court finds that her other arguments are enough to survive summary judgment, the Court does not consider this one.

**B.** **Could a jury hold Tezi Express or Max Trucking liable for Jasmin's conduct under a respondeat superior theory?**

The next question is whether respondeat superior could make Tezi Express or Max Trucking vicariously liable for Jasmin's tortious conduct.

"Under the doctrine of respondeat superior a principal is vicariously liable for the torts of its agent if the tortious acts are committed within the line and scope of the agent's employment." *Bain v. Colbert Cnty. Nw. Ala. Health Care Auth.*, 233 So. 3d 945, 955 (Ala. 2017) (alterations omitted). The determinative question is "whether the alleged principal reserved a right of control over the manner of the alleged agent's performance." *Wood v. Shell Oil Co.*, 495 So. 2d 1034, 1036 (Ala. 1986). The alleged principal "must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done." *Franklin v. Mitchell*, 87 So. 3d 573, 581 (Ala. Civ. App. 2011).

**1.** **Tezi Express**

Tezi Express "admit[ted] that Jasmin was [its] employee, and was driving in the course and scope of his employment at the time of the accident." (Doc. 65 at 21). So it will be vicariously liable for Jasmin's torts. *Bain*, 233 So. 3d at 955.

### 2.   Max Trucking

For the reasons below, a reasonable juror could find that Max Trucking had "a right of control" over Tezi Express and Jasmin. *See Wood*, 495 So. 2d at 1036.

Max Trucking argues that it had no right to exercise control over Tezi Express or Jasmin because it: (1) provided no instructions or communications about the accident load (other than one text message, Doc. 55-2 at 51); (2) did not own or lease the tractor or the trailer; (3) did not hire Tezi Express or Jasmin; and (4) did not transfer the load to Tezi Express but referred the load to 360 Logistics which brokered the load to Tezi Express. (Doc. 65 at 13).

Vasser counters that these facts support an agency finding:

1. Both Max Trucking and Tezi Express are motor carriers.

2. Izet Bakic—Jasmin's father and the owner of Tezi Express—entered a non-compete agreement with max trucking.

3. Jasmin was hauling Publix freight when the accident happened.

4. Tezi Express did not have a carrier-shipper agreement with Publix. and no one from Publix ever asked Jasmin to haul freight. But Max Trucking had an agreement to haul freight for Publix.

5. Max Trucking regularly asked Tezi Express to haul Publix freight, which Max Trucking was responsible for delivering. And Max Trucking knew that Tezi Express was the only company to which 360 Logistics brokered loads.

6. Jasmin hauled only Publix loads in the three months before the accident.

7.  Max Trucking dispatched details to Jasmin regarding the Accident Load.

8.  Max Trucking did not notify Publix that Tezi Express would haul Publix loads.

9.  Max Trucking invoiced Publix for work done by Tezi Express.

10. Tezi Express and Max Trucking shared the same fleet of trailers.

11. Jasmin "always" parked the Tezi Express truck at Max Trucking's facility.

12. Tezi Express had truck repairs performed at Max Trucking's building whenever repairs were needed, and Max Trucking had been invoiced for parts purchased for the Tezi Express truck.

13. Jasmin would call Max Trucking's dispatch phone regarding "problems or issues," and called Edin Bakic (his brother who worked for Max Trucking as a dispatcher) after the accident.

14. After the accident, Max Trucking arranged for another Max Trucking employee to deliver the accident load.

(Doc. 71 at 18–22).[6]

Viewing the evidence in a light most favorable to Vasser, the Court finds that the evidence supports a finding of agency between Max Trucking and Tezi Express (and, by extension, Jasmin). For example, the record shows that Tezi Express and Jasmin both regularly and exclusively hauled loads that originated with Max Trucking. *See Lancaster Symphony Orchestra v. NLRB*, 822 F.3d 563, 568 (D.C.

---

[6] These are Vasser's characterizations of the facts. Max Trucking disputes many of them.

Cir. 2016) (explaining that musicians being "part of the employer's regular business" supported agency); *Hodges & Co. v. Albrecht*, 259 So. 2d 829, 831 (Ala. 1972) (observing that an agent "hauled for [the principal] exclusively"). And it shows that Max Trucking invoiced Publix for the loads that Jasmin hauled without informing Publix that it referred the load to another carrier. These facts support an inference that Tezi Express and Jasmin operated as an extension of Max Trucking in an employment relationship.

More importantly, the record shows that Max Trucking communicated *some* details about the accident load to Jasmin (that is, the load number and pickup time). (Doc. 71 at 6 ¶ 23, *id.* at 7 ¶ 33). And the Supreme Court of Alabama has explained that "[t]he right to control another's time" is a key "ingredient of an employment relationship." *Williams v. Tenn. River Pulp & Paper Co.*, 442 So. 2d 20, 22 (Ala. 1983). From this, a reasonable juror could infer that Max Trucking reserved the right to control some aspects of Tezi Express's and Jasmin's time. *See Wright v. McKenzie*, 647 F. Supp. 2d 1293, 1301 (M.D. Ala. 2009). As a result, a reasonable jury could infer that Max Trucking "reserved a right of control over the manner of the alleged agent's performance." *Wood*, 495 So. 2d at 1036.

As the *Wright* Court recognized, it is "rarely appropriate" to decide agency questions at the summary-judgment stage. 647 F. Supp. 2d at 1302. Although Max

Trucking presents persuasive arguments against an ultimate finding of agency, the evidence supports sending the question to a jury. So the Court denies summary judgment on Max Trucking's respondeat superior liability.

### C.   Other Claims against Tezi Express

Vasser sued Tezi Express for negligent or wanton entrustment and negligent or wanton hiring, supervision, training, and retention against Tezi Express.

### 1.   Does respondeat superior subsume other claims?

Tezi Express argues that the Court should dismiss Vasser's claims for negligent or wanton entrustment, hiring, supervision, training, and retention as "derivative," "redundant," and "subsumed by the doctrine of respondeat superior." (Doc. 65 at 21–28). The Court disagrees.

Courts approach this question in two ways. The majority approach is that "it is improper to allow a plaintiff to proceed under two theories of recovery once the corporation admits that the alleged tortfeasor was its agent acting with[in] the scope and course of his employment." *Poplin v. Bestway Express*, 286 F. Supp. 2d 1316, 1318 (M.D. Ala. 2003). This approach reasons that negligent or wanton entrustment or hiring "imposes no additional liability on an employer and therefore the desirability of allowing a plaintiff to proceed with the claim is outweighed by the prejudice to the defendants inherent in allowing the claim." *Id.* at 1319.

The minority approach is that "an admission of liability does not preclude an action for both respondeat superior and negligent entrustment, training, hiring, retention, or supervision." *Id.* The rationales for this approach are that an employer's liability "is direct and not derivative," and that these theories "involve the employer's own negligence." *Id.*

Tezi Express "admit[ted] that Jasmin was an employee, and was driving in the course and scope of his employment at the time of the accident." (Doc. 65 at 21). And it argues that the Court should follow the majority approach and dismiss the other claims against it. (*Id.* at 21–28). In this diversity case, the Court applies the substantive law of Alabama. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). And in doing so, the Court resolves the issue as the state's highest court would. *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010).

Alabama courts have not resolved this question. But making an *Erie* guess in *Poplin*, the Middle District of Alabama held that the Alabama Supreme Court would follow the minority approach. *Poplin*, 286 F. Supp. 2d at 1319–20. And this Court later adopted and followed *Poplin*. *See Stanford v. McDaniel*, No. CV 06-B-0048-W, 2008 WL 11422598, at *6 (N.D. Ala. Jan. 22, 2008). Both *Poplin* and *Stanford* relied exclusively on the Alabama Supreme Court's decision in *Bruck v. Jim Walter Corporation*, 470 So. 2d 1141 (1985).

14

In *Bruck*, a plaintiff sued a driver for negligent or wanton operation of a vehicle and sued the driver's employer for negligent or wanton entrustment. 470 So. 2d at 1142. Once the employer admitted agency, the trial court excluded evidence of the driver's driving history, which was essential to the entrustment claim, under the rationale that it was irrelevant and prejudicial. *Id.* And the Alabama Supreme Court held that the trial court erred by excluding the evidence. *Id.* at 1145.

To reach that conclusion, the *Bruck* court explained that negligent or wanton entrustment is "an independent tort resting upon the negligence of the entrustor in entrusting the vehicle to an incompetent driver." *Id.* at 1143. And after observing that the operation claim and entrustment claim were "two separate and distinct counts," the court held that a plaintiff has a "right to proceed on separate claims." *Id.* at 1143–44. So the court held that the trial court erred by excluding evidence necessary to prove a claim that the plaintiff had a right to pursue. *Id.* at 1145. And rather than excluding evidence of the entrustment claim, the court explained that the proper remedy would be to employee "adequate safeguards to protect against the possible prejudicial effect of such evidence." *Id.* at 1145.

Because of *Bruck*, the Court agrees with *Poplin* and *Stanford* that the Alabama Supreme Court would likely follow the minority approach. That is, the Alabama Supreme Court would likely hold that a principal's admission of respondeat superior

liability does not preclude the plaintiff from pursuing independent claims for negligent or wanton entrustment, hiring, supervision, training, and retention. Those claims focus on the wrongfulness of the principal, not the agent. *See Bruck*, 470 So. 2d at 1143 (explaining that negligent entrustment liability "rest[s] upon the negligence of the entrustor in entrusting the vehicle to an incompetent driver").

Tezi Express acknowledges *Poplin* but makes no effort to explain how it was wrong. Instead, Tezi Express points to *Hunt v. 21st Mortgage Corporation*, in which this Court dismissed a negligent hiring and supervision claim after the defendant admitted agency. No. 2:12-CV-2697, 2014 WL 426275, at *9 (N.D. Ala. Feb. 4, 2014). But the *Hunt* court did not account for the Alabama Supreme Court's holding that a plaintiff has a "right to proceed on separate claims." *Bruck*, 470 So. 2d at 1144. And this Court therefore rejects its reasoning and holding.[7]

Tezi Express's admission of respondeat superior liability does not warrant the dismissal of the "independent tort[s]" against it. *Id.* But the Court notes that it will consider the need for (and adequacy of) safeguards against the potential prejudicial effect of evidence about Jasmin's driving record.

---

[7] The Court also rejects Tezi Express's reliance on *Jones Express, Inc. v. Jackson*, 86 So. 3d 298 (Ala. 2010). *Jones Express* did not hold, as Max Trucking suggests, that claims for negligent (or wanton) entrustment, hiring, training, retention, and supervision "are derivative claims" or that "the plaintiff must first prove driver negligence for those claims to be considered." (Doc. 65 at 26). Rather, the *Jones Express* court merely held that a jury rendered inconsistent verdicts (by finding the driver not negligent but the employer negligent), because they hinged on the same factual question and therefore should have been the same. *Jones Express, Inc.*, 86 So. 3d at 306.

### 2.    Negligent entrustment against Tezi Express

For negligent entrustment, the plaintiff must prove: (1) an entrustment; (2) to an incompetent; (3) with knowledge that he is incompetent; (4) proximate cause; and (5) damages. *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 412 (Ala. 2005). Tezi Express challenges the second, third, and fourth elements.

### a.    Element two: Jasmin's incompetency

Tezi Express argues that the record lacks evidence that Jasmin was incompetent to operate the 18-wheeler. (Doc. 65 at 29–31). "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford*, 921 So. 2d at 413–14. The plaintiff can show incompetence with evidence that the driver was "unable or unlikely to have operated the motor vehicle with reasonable safety due to one of several characteristics or conditions, including general incompetence or habitual negligence." *Edwards v. Valentine*, 926 So. 2d 315, 322 (Ala. 2005) (quotation marks omitted). Showing "evidence of previous acts of negligent or reckless driving" may also suffice. *Id.* at 322. And as the Alabama Supreme Court explained long ago, "incompetency is connected conjunctively with carelessness, indifference, heedlessness and recklessness." *McGowin v. Howard*, 36 So. 2d 323, 325 (Ala. 1948).

A reasonable juror could consider the following evidence and find that Jasmin

was generally incompetent to operate a motor vehicle:

- Jasmin testified that he has received "a lot" of tickets. (Doc. 59 at 15).

- In August 2019 (the month before the accident), Jasmin received traffic citations for speeding (6–10 mph over) and for following too closely to another vehicle while driving a commercial vehicle. (Docs. 59-13 at 2, 59 at 108). And in August 2018, again while driving a commercial vehicle, Jasmin received a traffic citation for a lane restriction violation. (Doc. 59-13 at 2, 59 at 108).[8]

- Between June 2006 and May 2015, while driving his personal vehicle, Jasmin received 28 traffic tickets: (1) 14 speeding tickets (11 of which were for driving at least 20 mph over the limit); (2) one ticket for passing with insufficient clearance; (3) two tickets for following too closely; (4) one ticket for failure to signal a lane change or turn; (5) one ticket for failure to obey signs or control devices; (6) two tickets for reckless driving; (7) one ticket for failure to keep his proper lane; (8) one ticket for failure to exercise due care; (9) one ticket for driving circular or zig-zag course, laying drags; (10) two tickets for improper/erratic lane change; and (11) one ticket for operating a vehicle where prohibited. (Doc. 54-1).

- Between May 2007 and November 2012, Jasmin had his non-commercial driver's license suspended five times. (Doc. 54-1 at 8–10).

- Jasmin had been in at least two accidents in his personal vehicle before the accident with Danny Vasser. (Doc. 59 at 102).

From these facts, a jury could infer that Jasmin's driving record exhibits a "general

---

[8] Vasser's source for Jasmin's commercial-vehicle citations is an internet printout of Tezi Express's Safety Measurement System Profile from the Federal Motor Carrier Safety Administration. (Docs. 59-13, 69-1). The defendants moved to strike this evidence as uncertified and hearsay. (Docs. 76, 77). The Court finds that the SMSP is self-authenticating under Federal Rule of Evidence 902(5). *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 551 (D. Md. 2007). And the Court finds that the SMSP satisfies the public-records exception to hearsay under Federal Rule of Evidence 803(8). *See id.*; *see also United States v. Mirelez*, 59 F. App'x 286, 287 n.1 (10th Cir. 2003). The Court therefore denies the defendants' motion to strike the SMSP evidence. (Docs. 76, 77).

incompetence," *Edwards*, 926 So. 2d at 322, and a pattern of "carelessness, indifference, heedlessness and recklessness." *McGowan*, 36 So. 2d at 325.

Tezi Express makes three counterarguments that do not persuade the Court otherwise. First, Jasmin attended commercial driving school and obtained his commercial driver's license. (Doc. 65 at 4 ¶ 9–10). While those facts are probative of competence, *see Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1225 (M.D. Ala. 2015), they do not preclude a finding that Jasmin was incompetent.

Second, all but three of Jasmin's pre-accident citations were in personal vehicles. (Doc. 54-1). But a jury could rely on those citations to find that Jasmin was generally incompetent to operate *any* vehicle. And his most recent citations related to his operation of a commercial vehicle. (Docs. 59 at 108, 59-13 at 2). As a result, the Court rejects the related argument that "Jasmin cleaned up his driving record before this accident and proved to be a reliable commercial driver." (Doc. 65 at 31).

And third, most of his citations predated the accident by several years. But that does not make them irrelevant. *See Edwards*, 926 So. 2d at 322 (considering a 1986 DUI conviction as probative of a driver's competence in 2002); *Hobbs v. U.S. Xpress, Inc.*, No. 7:18-cv-2129, 2021 WL 913398, at *4 (N.D. Ala. Mar. 10, 2021) (considering a 1995 DUI conviction as probative of a driver's competence in 2017).

So there is enough evidence to support a jury finding that Jasmin was

generally incompetent to operate a personal or commercial vehicle in 2017.[9]

### b.      Element three: Tezi Express's knowledge

To satisfy this element, the plaintiff must "establish that the defendant knew, or by the exercise of reasonable care, would have known that the entrustee was incompetent." *Dunaway v. King*, 510 So. 2d 543, 546 (Ala. 1987). Tezi Express concedes that Izet Bakic (the owner of Tezi Express and Jasmin's father) knew about Jasmin's driving history. (Doc. 65 at 32). But it adds that Izet also "knew that Jasmin had changed his driving habits prior to Tezi Express hiring [him]." (*Id.*). A reasonable jury could find that Jasmin's driving habits had not improved and that Tezi Express knew about Jasmin's incompetence at the time of the entrustment.

### c.      Element four: Proximate causation

Tezi Express argues that Vasser cannot prove proximate causation because "[t]he basis for [his] alleged incompetence was not the basis for the accident." (Doc. 65 at 32–33). And it emphasizes that "[t]here is no evidence that Jasmin's history of speeding proximately caused the accident." (*Id.* at 33).

The Court begins by recognizing that the Alabama Supreme Court has presented the plaintiff's proximate-cause burden in two materially different ways.

---

[9] Vasser also asked the Court to consider Jasmin's post-accident driving record. Without deciding whether it is proper to do so, the Court will not consider Jasmin's post-accident driving record because it is unnecessary to resolve summary judgment.

On one hand, the supreme court has said that the plaintiff must prove that "negligent or wanton use of the entrusted vehicle which proximately caused the plaintiff's damages." *Penland v. Allsup*, 527 So. 2d 715, 715 (Ala. 1988). Under *Penland*, the alleged basis of incompetence appears irrelevant to proximate cause. On the other hand, the supreme court has also said that "the entrustor's liability for such entrustment [of a vehicle] depends upon an injury proximately resulting from the incompetency of the entrustee." *Edwards*, 926 So. 2d at 325. And under *Edwards*, the alleged basis for incompetency appears relevant.

But this Court needn't choose because Vasser meets both proximate-cause standards. First, Vasser satisfies *Penland* because a reasonable jury could find that Jasmin's negligent or wanton operation of the 18-wheeler caused Danny Vasser's injuries. Second, Vasser satisfies *Edwards* because she presented evidence of Jasmin's "general incompetence," *id.* at 322, through various traffic infractions (including speeding, failure to obey road signs, reckless driving, failure to exercise due care, and so on.). And a reasonable jury could find that Jasmin's general incompetence proximately caused the accident. So the Court denies summary judgment on Vasser's claim of negligent entrustment against Tezi Express.

### 3.  Wanton entrustment against Tezi Express

Vasser's claim for wanton entrustment against Tezi Express also survives

summary judgment. From the above-referenced evidence, a reasonable jury could find that Tezi Express "entrusted the [18-wheeler] to [Jasmin] while knowing that th[e] entrustment would likely or probably result in injury to others." *Jordan v. Calloway*, 7 So. 3d 310, 317 (Ala. 2008). So the Court denies summary judgment.

### 4. Negligent hiring, training, supervision, and retention against Tezi Express

To prevail on negligent hiring, training, supervision, and retention, Vasser must prove: (1) that Jasmin committed an Alabama common-law tort; (2) that Tezi Express knew of Jasmin's incompetency or would have known of his incompetency had it exercised due and proper diligence; and (3) that Tezi Express failed to respond adequately after gaining notice of Jasmin's incompetency. *Hobbs*, 2021 WL 913398, at *5. A reasonable juror could find in Vasser's favor for each of these elements. So the Court denies summary judgment on this claim.

### 5. Wanton hiring, training, supervision, and retention against Tezi Express

Vasser's claim for wanton hiring, training, supervision, and retention against Tezi Express also survives summary judgment. A reasonable juror could find that Tezi Express hired, trained, supervised, and retained Jasmin with knowledge of Jasmin's incompetency and being conscious that, from doing so, injury will likely or probably result. *See Ex parte Essary*, 992 So. 2d at 9.

**D.     Other Claims against Max Trucking**

Vasser also sued Max Trucking for negligent or wanton entrustment and for negligent or wanton hiring, training, supervision, and retention. (Doc. 24).

As for the entrustment claims, Max Trucking argues that: (1) it "did not entrust the tractor or the trailer to Jasmin," (Doc. 65 at 34); (2) Jasmin was not incompetent, (*id.* at 29–31); (3) no evidence shows that Max Trucking "knew or should have known of Jasmin's driving history," (*id.* at 32); and (4) Vasser cannot prove proximate causation, (*id.* at 32–34). Additionally, Max Trucking emphasizes that it "did not hire or have any control whatsoever over Jasmin or Tezi Express," and so a jury could not impute Tezi Express's entrustment or knowledge of Jasmin's driving history to Max Trucking through agency. (*Id.* at 34).

Max Trucking argued that there is no agency relationship between it and Tezi Express, which the court rejected above. *Supra* at 9–13. Beyond that, Max Trucking makes no alternative arguments about the scope of that agency relationship. In other words, Max Trucking doesn't argument that Tezi Express (if an agent) lacked authority to entrust the tractor and trailer to Jasmin.

A reasonable jury could find that: (1) Max Trucking's agent entrusted the tractor to Jasmin; (2) Jasmin was incompetent; (3) Max Trucking's agent knew about Jasmin's incompetency; and (4) Jasmin's operation of the eighteen wheeler (and his

incompetency) proximately caused Danny Vasser's injuries. Additionally, a reasonable jury could find that Max Trucking's agent "entrusted the [18-wheeler] to [Jasmin] while knowing that th[e] entrustment would likely or probably result in injury to others." *Jordan*, 7 So. 3d at 317. So the Court denies summary judgment on the negligent and wanton entrustment claims against Max Trucking.

As for Vasser's claims for negligent or wanton hiring, training, supervision, and retention, the Court denies summary judgment for the same reasons. A reasonable jury could find that Tezi Express was Max Trucking's agent. Max Trucking makes no limiting arguments about the scope of Tezi Express's authority. And a reasonable jury could find that Vasser satisfies all the elements of negligent or wanton hiring, training, supervision, and retention against Max Trucking through its agent, Tezi Express. So the Court denies summary judgment.

\* \* \*

In sum, the Court denies the defendants' motion for partial summary judgment. Vasser may proceed to trial on these claims: (1) against Jasmin for negligently or wantonly operating the eighteen wheeler; (2) against Tezi Express and Max Trucking for vicariously liability under respondeat superior; (3) against Tezi Express for negligent or wanton entrustment and for negligent or wanton hiring, training, supervision, and retention; and (4) against Max Trucking for negligent or

wanton entrustment and for negligent or wanton hiring, training, supervision, and retention.

## II.    Vasser's motion for partial summary judgment and motion in limine

Defendants pleaded a contributory-negligence defense based on the allegation that Danny Vasser's motorcycle headlight was unlit. Vasser seeks partial summary judgment on that defense. (Doc. 56). She also seeks to exclude the defense expert's testimony and opinion that relies on the post-collision position of Danny Vasser's motorcycle speedometer needle. (*Id.*).

### A.    Partial summary judgment on the contributory-negligence defense

Vasser says that the defendants "cannot provide sufficient evidence to support any contributory negligence defense that would be based on a purported failure of Mr. Vasser to have his lights on at the time of the collision." (Doc. 66 at 6). The Court disagrees and denies summary judgment.

Vasser makes a good case that Danny's headlight *was* lit by citing evidence that: (1) his side lamps were lit at the time of the accident; (2) Harley Davidson wires motorcycles for the headlight to illuminate whenever the motorcycle is running; (3) there is no switch to de-activate the light; and (4) the plaintiff's expert "didn't see anything to indicate that there would be any reason that the lamp would not be functioning." (*See* Docs. 66, 70).

That said, no one testified that he saw Danny's headlight at the time of the accident. And Jasmin testified that he never saw any lights illuminated on the road (doc. 52-1 at 63–64) and that he never saw Danny Vasser, despite coming to a stop multiple times (*id.* at 56–57). That's enough for a reasonable juror to find that Danny Vasser's headlight was unlit at the time of the accident. So the Court denies Vasser's motion for partial summary judgment.

### B.    Motion in limine

Vasser seeks to exclude the defense expert's "opinion about the impact speed of Mr. Vasser's motorcycle to the extent that it relies on the post-collision position of the speedometer needle." (Doc. 66 at 5). Her motion raises valid concerns about the reliability of Will Partenheimer's expert testimony. But the Court denies the motion without prejudice and invites Vasser to refile her motion at a later date, under the Court's forthcoming scheduling order. The Court will resolve all motions in limine together.

\* \* \*

To sum up, the Court denies both parties' motions for partial summary judgment. (Docs. 50, 56). The Court also denies the defendants' motion to strike (docs. 76, 77) and denies without prejudice Vasser's motion in limine (doc. 56).

The Court will enter an order that sets: (1) deadlines for witness/exhibit lists

and motions in limine, (2) a pretrial conference date, and (3) a trial date.

**DONE and ORDERED** on January 3, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE